UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
SEBASTIAN VILLARRUBIA,                              :
KEIBER APARCEDO, and                                :
MAURICIA MAYOR GOMEZ,                               :
                                                    :          **REPORT AND**
                        Plaintiffs,                 :          **RECOMMENDATION**
                                                    :
            -against-                               :          18-CV-4929 (AMD) (PK)
                                                    :
LA HOGUERA PAISA RESTAURANT &                       :
BAKERY CORP., LA HACIENDA DON JULIO                 :
CORP., JOSE RESTREPO, and NAHUM                     :
RODRIGUEZ, jointly and severally,                   :
                                                    :
                        Defendants.                 :
------------------------------------------------------------- x

**Peggy Kuo, United States Magistrate Judge:**

Plaintiffs Sebastian Villarrubia, Keiber Aparcedo, and Mauricia Mayor Gomez (collectively,

"Plaintiffs") brought this action against defendants La Hoguera Paisa Restaurant & Bakery Corp., La

Hacienda Don Julio Corp., Jose Restrepo, and Nahum Rodriguez alleging violations of the Fair

Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*; the New York Labor Law ("NYLL") §§ 198

and 663; Title VII of the Civil Rights Act of 1964 ("Title VII"); the New York City Human Rights

Law ("NYCHRL") N.Y. Admin. Code. §§8-107(a); and the New York Human Rights Law

("NYHRL") N.Y. Executive Law § 296(1)(a).  (*See* Compl., Dkt. 1.)

Before the Court on referral from the Honorable Ann Donnelly is Plaintiffs' Motion for

Default Judgment (the "Motion") against defendant La Hoguera Paisa Restaurant & Bakery Corp.

("La Hoguera Paisa" or "Defendant").[1]  (Notice of Motion for Default Judgment, Dkt. 16.)  For the

---

[1] When filed, the Motion also sought default judgment against La Hacienda Don Julio Corp.  In a supplemental filing dated February 10, 2020, Plaintiffs stated that they were unable to find a legal basis for liability against La Hacienda Don Julio Corp. Although that filing mistakenly added a request for default judgment against individual defendants Jose Restrepo and Nahun Rodriguez (Dkt. 26), in a follow-up letter dated February 20, 2020, Plaintiffs clarified that they have been unable to serve Restrepo and Rodriguez.  (Dkt. 27.)

reasons stated herein, the undersigned respectfully recommends that the Motion be granted in part and denied in part.

## FACTUAL BACKGROUND

La Hoguera Paisa, a domestic business corporation organized under the laws of the State of New York, owned and operated a Colombian restaurant at 40-12 Queens Boulevard in Sunnyside, New York. (Compl. ¶ 13.) La Hoguera Paisa was owned by Jose Restrepo ("Restrepo") and Nahum Rodriguez ("Rodriguez") until February 9, 2018, at which point an individual named "Julio" purchased all "assets, shares, and business" of La Hoguera Paisa. (*Id.* ¶¶ 12, 22.) Julio operated the restaurant together with Restrepo and Rodriguez for approximately one week before taking complete control on or around February 20, 2018. (*Id.* ¶ 75.) Throughout this transition, the restaurant continued operating without interruption, utilizing the same décor, menus, food items, equipment, and female personnel. (*Id.* ¶ 77.)

Plaintiffs worked at the restaurant. Plaintiff Sebastian Villarrubia ("Villarrubia") worked as a waiter and a grill man from August 2016 until February 2018. (*Id.* ¶ 40.) During that time, he worked five days a week for approximately 42-45 hours per week. (*Id.* ¶¶ 41-42.) Approximately 40% of those hours were spent working as a waiter, a role in which he was paid $7.50 per hour in 2016 and $8.00 per hour from January 2017 until he was terminated. (*Id.* ¶¶ 42-43.) When working as a grill man, he was paid $9.00 per hour in 2016 and $10.50 per hour from January 2017 until he was terminated. (*Id.* ¶ 43.)

Plaintiff Keiber Aparcedo ("Aparcedo") worked as a waiter and a grill man from October 2016 until February 2018. (*Id.* ¶ 46.) During that time, he worked four days a week for approximately 42-44 hours per week. (*Id.* ¶¶ 47, 49.) Approximately 50% of those hours were spent working as a waiter, a role in which he was paid $7.50 per hour in 2016 and $8.00 per hour from

January 2017 until he was terminated.  (*Id.* ¶¶ 49-50.)  When working as a grill man, he was paid $9.00 per hour in 2016 and $10.50 per hour from January 2017 until he was terminated.  (*Id.* ¶ 50.)

Plaintiff Mauricia Mayor Gomez ("Gomez") worked as a waiter from March 2017 until February 2018.  (*Id.* ¶ 52.)  During that time, he worked five days a week for approximately 43-46 hours per week and was paid $8.00 per hour.  (*Id.* ¶¶ 52-55.)

Plaintiffs were paid exclusively in cash throughout their employment and were never provided with either wage statements or notices.  (*Id.* ¶¶ 64-66.)  They did not receive time-and-a-half for any overtime hours worked.  (*Id.* ¶ 116.)

On February 20, 2018, Plaintiffs were informed that they were terminated.  Villarrubia learned he was terminated through a phone call from a co-worker.  (*Id.* ¶ 44.)  The co-worker specifically mentioned that the new owner did not want male waiters at the restaurant.  (*Id.*)  Villarrubia went to the restaurant on February 22, 2018 and spoke directly with Julio, who confirmed that he did not want any male waiters working at the restaurant.  (*Id.* ¶ 45.)  Aparcedo learned he was terminated through a text message he received from a co-worker, informing him that the new owner "only wants women."  (*Id.* ¶ 51.)  Gomez was terminated in person, by Julio, who reiterated his desire to have only females as his waitstaff.  (*Id.* ¶ 56.)  All female employees at La Hoguera Paisa retained their positions.  (*Id.* ¶ 76.)  Plaintiffs were replaced with women.  (*Id.* ¶ 70.)

Julio formed La Hacienda Don Julio Corp. on March 13, 2018.  (*Id.* ¶¶ 12, 78.)  La Hacienda Don Julio Corp. does business as La Hacienda Don Julio, a restaurant offering Columbian food at the same address as La Hoguera Paisa.  (*Id.* ¶ 79.)

Plaintiffs filed complaints with the EEOC on March 21, 2018 and received their Right to Sue letters on June 4, 2018.  (*Id.* ¶ 4.)

## PROCEDURAL BACKGROUND

Plaintiffs filed the Complaint on August 29, 2018.  (Dkt. 1.)  Defendant was served with the Summons and Complaint via the New York Secretary of State on September 27, 2018.  (Affidavit of Service, Dkt. 10.)  When Defendant failed to respond to the Complaint, Plaintiffs requested a Certificate of Default, which was entered by the Clerk of Court on January 10, 2019.  (Dkts. 12, 13.)  Plaintiffs filed the Motion on March 15, 2019.  (Dkt. 16.)

On January 10, 2020, Plaintiffs were granted leave to supplement the Motion with updated calculations for their wage and hour claims and damages in their discrimination claims.  (*See* Minute Order dated 1/20/2020.)  Plaintiffs' supplemental filing ("Supp. Filing") was made on February 10, 2020, containing updated wage and hour calculations and attorney timesheets, but no information on damages related to discrimination.  (Dkt. 26.)

## DISCUSSION

### I.    Default Judgment Standard

Federal Rule of Civil Procedure 55 governs the procedure that applies in cases where there is a default during the course of litigation.  *See* Fed. R. Civ. P. 55; *see also City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011).  It provides "a 'two-step process' for the entry of judgment against a party who fails to defend." *Mickalis*, 645 F.3d at 128; *see also GuideOne Specialty Mut. Ins. Co. v. Rock Cmty. Church, Inc.*, 696 F. Supp. 2d 203, 208 (E.D.N.Y. 2010).  First, when a defendant "has failed to plead or otherwise defend," the Clerk of Court enters the defendant's default. Fed. R. Civ. P. 55(a).  Then, the plaintiff must "apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2).

"A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true." *United States v. Myers,* 236 F. Supp. 3d 702, 706 (E.D.N.Y. 2017) (citations omitted).  However, "just because a party is in default, the

plaintiff is not entitled to a default judgment as a matter of right." *GuideOne*, 696 F. Supp. 2d at 208. The Court must ensure that (1) jurisdictional requirements are satisfied, *see Mickalis*, 645 F.3d at 125-27, 133; (2) plaintiffs took all the required procedural steps in moving for default judgment, Local Civ. R. 55.2(c); and (3) plaintiffs' allegations, when accepted as true, establish liability as a matter of law. *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). The court exercises significant discretion in deciding whether to grant a default judgment, including whether the grounds for default are clearly established and the amount of damages. *See GuideOne*, 696 F. Supp. 2d at 208; *see also Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 615 (2d Cir. 1999); *Klideris v. Trattoria El Greco*, No. 10-CV-4288 (JBW) (CLP), 2011 WL 7114003, at *2 (E.D.N.Y. Sept. 23, 2011), *R&R adopted,* 2012 WL 273078 (E.D.N.Y. Jan. 30, 2012); *Mickalis*, 645 F.3d at 129.

## II.     Jurisdictional and Procedural Requirements

### a.   Jurisdiction

The court from which default judgment is sought must assure itself that it has subject matter jurisdiction over the action. *See Mickalis*, 645 F.3d at 125-26; *see also Jennifer Matthew Nursing & Rehab. Ctr. v. U.S. Dep't of Health & Human Servs.*, 607 F.3d 951, 955 (2d Cir. 2010). The court may also inquire as to whether it has personal jurisdiction. *See Mickalis*, 645 F.3d at 133; *see Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010).

Subject matter jurisdiction is found pursuant to the FLSA, 29 U.S.C. §§ 201 *et seq.*, and Title VII of the Civil Rights Act of 1964. *See* 28 U.S.C. § 1331. Additionally, this Court has supplemental jurisdiction over the related NYLL, NYCHRL, and NYHRL claims. *See* 28 U.S.C. § 1367.

This Court has personal jurisdiction over La Hoguera Paisa because it is a New York corporation with its principal place of business within the Eastern District of New York. (Compl. ¶ 5; Ex. G to Affirmation of Ariadne Anna Panagopoulou Alexandrou, NYS Department of State Division of Corporations Entity Information, Dkt. 18-7.) *See Daimler AG v. Bauman*, 571 U.S. 117,

137 (2014) ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'") (alteration in original).

    b.  <u>Service</u>

The Summons and Complaint must be properly served on the defaulting party. *See Advanced Capital Commercial Grp., Inc. v. Suarez*, No. 09-CV-5558 (DRH) (GRB), 2013 WL 5329254, at *2 (E.D.N.Y. Sept. 20, 2013). Plaintiffs have made a *prima facie* showing of proper service of the Summons and Complaint on Defendant by filing a process server's Affidavit of Service Through the Secretary of State pursuant to § 306 of the New York Business Corporation Law. (Dkt. 5.) *See Old Republic Ins. Co. v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002).

    c.  <u>Procedural Requirements</u>

Plaintiffs have demonstrated that they have taken the required procedural steps to provide proper notice to Defendant. They requested a Certificate of Default (which was entered by the Clerk of the Court) and notified Defendant of the status of this action by mailing Defendant the Motion papers (Dkts. 12, 13, 28.)

**III.    Wage and Hour Claims**

    a.  <u>General</u>

When determining liability, the Court accepts as true all well-pleaded allegations in the Complaint, drawing all reasonable inferences in favor of Plaintiffs. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65-66 (2d Cir. 1981); *see also Finkel*, 577 F.3d at 84; *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

    i.  <u>Employment Relationship Under the FLSA</u>

To plead a cause of action under the FLSA, Plaintiffs must establish that: (1) Defendant is an employer subject to the FLSA; (2) Plaintiffs are employees within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA. *See Saucedo v. On the Spot Audio Corp.*,

No. 16-CV-0451 (CBA) (CLP), 2016 WL 8376837, at *4 (E.D.N.Y. Dec. 21, 2016), *R&R adopted*, 2017 WL 780799 (E.D.N.Y. Feb. 28, 2017); *see also* 29 U.S.C. §§ 203, 213.

The FLSA broadly describes an employer as "any person [or corporation] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). A defendant is an FLSA employer if it meets the criteria for either enterprise or individual coverage. *See Saucedo*, 2016 WL 8376837, at *4. The enterprise coverage test considers whether the employer has employees engaged in commerce or in the production of goods for commerce, "or [ ] has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and . . . whose annual gross volume of sales made or business done is not less than $500,000." 29 U.S.C. § 203(s)(1)(A)(i)-(ii); *see also Fermin v. Las Delicias Peruanas Rest. Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015).

Here, Plaintiffs assert that La Hoguera Paisa both imported food and drinks and engaged vendors and businesses from outside of the State of New York. (Compl. ¶ 15.) Plaintiffs also assert that La Hoguera Paisa had annual gross volume of sales of not less than $500,000. (*Id.* ¶ 20.) Generally, allegations describing statutory definitions may not be sufficient to infer a nexus to interstate commerce without further proof. However, in the context of default, the Court may accept these uncontested allegations as true and make reasonable inferences. *See, e.g., Rodriguez v. Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011); *but see Jones v. E. Brooklyn Sec. Servs. Corp.*, No. 11-CV-1021 (SMG), 2012 WL 909830, at *2 (E.D.N.Y. Feb. 28, 2012), *R&R adopted*, 2012 WL 909825 (E.D.N.Y. Mar. 16, 2012). Therefore, the record in this case is sufficient to establish La Hoguera Paisa's status as an employer for the purpose of Plaintiffs' Motion.

An "employee," under the FLSA, is likewise broadly defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The statute protects "employee[s] who in any workweek [are] engaged in commerce or in the production of goods for commerce" and those persons who are

7

"employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a).

Plaintiffs allege that they were employed by La Hoguera Paisa as grill men, waiters, or both. (Compl. ¶¶ 40, 46, 52.) Accepting the allegations set forth in the Complaint as true, Plaintiffs fall within the FLSA's definition of "employee."

There is also an employer-employee relationship between Plaintiffs and La Hoguera Paisa under the Second Circuit's "economic reality" test, which determines "whether workers are employees and [ ] whether managers or owners are employers." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104 (2d Cir. 2013). The economic reality test considers whether the alleged employer: "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.*, 735 F.2d 8, 12 (2d Cir. 1984). The Court must consider the "totality of the circumstances" and no one factor is dispositive. *Irizarry*, 722 F.3d at 110.

Here, Plaintiffs allege that Restrepo and Rodriguez "had discretionary power to create and enforce personnel decisions on behalf of La Hoguera Paisa, including … hiring and terminating employees; setting and authorizing issuance of wages, maintaining employee records, setting Plaintiffs' and other employees' schedule; setting Plaintiffs' rate of pay; instructing, supervising, and training Plaintiffs; and otherwise controlling the terms and conditions for the Plaintiffs while they were employed by Defendants." (Compl. ¶ 27.) Plaintiffs also assert that La Hoguera Paisa "maintained control, oversight, and direction over the Plaintiffs, including timekeeping, payroll, and other employment practices that applied to them." (*Id.* ¶ 16.)

Accepting Plaintiffs' allegations as true, La Hoguera Paisa was Plaintiffs' employer.

Finally, Plaintiffs must show that they were not exempt from the FLSA's protections. *Fermin*, 93 F. Supp. 3d at 32. The FLSA "contains a litany of exemptions," *id.* (internal quotation marks and citations omitted), but they do not include functions such as grill men and waiters. *See* 29 U.S.C. § 213. Specifically, Plaintiffs were not "employed in a bona fide executive, administrative, or professional capacity," 29 U.S.C. § 213(a)(1), defined as one "whose primary duty is management of the enterprise, … and who has the authority to hire or fire other employees…." *See* 29 C.F.R. § 541.100. Plaintiffs allege that, "Throughout the duration of their employment, [they] did not have any supervisory authority nor did they exercise discretion or independent judgment with respect to matters of significance." (Compl. ¶ 34.) Plaintiffs also allege that they never had any managerial duties. (*Id.*) Accordingly, Plaintiffs are non-exempt employees under the FLSA.

ii. Employment Relationship Under the NYLL

To prevail on a NYLL claim, Plaintiffs must establish that their employment relationship with La Hoguera Paisa falls within the NYLL, which applies to "any person employed for hire by an employer in any employment." N.Y. Lab. Law § 190. Under the NYLL, employers are not required to "achieve a certain minimum in annual sales or business in order to be subject to the law," and may be held jointly and severally liable for violations. *Saucedo*, 2016 WL 8376837, at *6. Otherwise, the NYLL's definition of "employer" is "nearly identical" to that of the FLSA, and the analysis of the employment relationship under both statutes is based on the same factors. *See Mahoney v. Amekk Corp.*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6585810, at *9 (E.D.N.Y. Sept. 30, 2016), *R&R adopted*, No. 14-CV-4131 (ENV) (VMS), 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016) (collecting cases holding that the FLSA and NYLL are interpreted consistently with one another on the question of employer status). Because Plaintiffs had an employer-employee relationship with La Hoguera Paisa under the FLSA, they also had an employer-employee relationship under the NYLL.

### iii.  Statute of Limitations

Under the FLSA, the statute of limitations is two years, "except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C § 255(a).  The three-year statute of limitations period applies here because La Hoguera Paisa's default itself establishes willfulness.  *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *6 (E.D.N.Y. Mar. 31, 2015).  The statute of limitations for an FLSA plaintiff runs from "the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint."  *Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314 (SJ) (RER), 2015 WL 5561033, at *6 (E.D.N.Y. Sept. 1, 2015), *R&R adopted*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015).  Plaintiffs filed the Complaint on August 29, 2018.  Because all three Plaintiffs began their employment within three years of that date, they may recover for FLSA violations that occurred during the entirety of their employment with La Hoguera Paisa.  (Compl. ¶¶ 40, 46, 52.)

Under the NYLL, the statute of limitations is six years.  *See* N.Y. Lab. Law §§ 198(3), 663(3).  Therefore, Plaintiffs may also recover for NYLL violations that occurred during the entirety of their employment with La Hoguera Paisa.

### b.  Specific Claims

Plaintiffs Villarrubia, Aparcedo, and Gomez seek (1) $5,459.25, $5,106.25, and $6,853.00, respectively, for unpaid minimum wages pursuant to the FLSA and NYLL; (2) $1,445.50, $1,117.50, and $1,210.50, respectively, for unpaid overtime wages pursuant to the FLSA and NYLL; (3) $6,904.75, $6,223.75, and $8,063.50, respectively, in liquidated damages pursuant to the NYLL; (4) pre-judgment interest at the rate of nine per cent per annum pursuant to the N.Y. C.P.L.R. § 5004; (5) $5,000.00 each for wage notice statutory damages pursuant to NYLL Section 195(1); (6) $5,000.00 each for wage statement statutory damages pursuant to NYLL Section 195(3); and (7)

reasonable attorneys' fees and costs pursuant to both the FLSA and NYLL.  (Ex. 2 to Supplemental

Filing, Damage Calculations (Wage and Hour) ("Damage Calculations Chart"), Dkt. 26-2.)

Plaintiffs' allegations as to damages are not deemed true, and courts have an "obligation to

ensure that damages [a]re appropriate." *Stark Carpet Corp. v. Stark Carpet & Flooring Installations,*

*Corp.*, 954 F. Supp. 2d 145, 151 (E.D.N.Y. 2013) (quoting *Transatlantic Marine Claims Agency, Inc. v.*

*Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir.1997)) (alteration in original).

Plaintiffs have submitted a memorandum of law supporting the relief sought and a statement

of damages in the form of a detailed chart specifying the amounts for each alleged violation.  (*See*

Mem. of Law, Dkt. 17; Supplemental Filing.)

i.   Minimum Wages

"An employee bringing an action for unpaid wages under the FLSA or the NYLL has the

burden of proving that the defendant did not adequately compensate the employee." *Carrasco-Flores*

*v. Comprehensive Health Care & Rehab. Servs., LLC*, No. 12-CV-5737 (ILG) (JMA), 2014 WL 4954629,

at *3 (E.D.N.Y. Oct. 2, 2014).  Under both federal and state law, an employer must "make, keep,

and preserve" records of its employees' wages and employment conditions. 29 U.S.C. § 211(c); *see*

N.Y. Lab. Law § 196–a(a). "However, if an employer fails to keep or produce records, the plaintiff

may satisfy [his or] her burden by producing sufficient evidence to show the amount and extent of

that work as a matter of just and reasonable inference." *Carrasco–Flores*, 2014 WL 4954629, at *3

(internal quotation marks omitted); *see also Avelar v. Ed Quiros, Inc.*, No. 13-CV-7017 (ADS) (AYS),

2015 WL 1247102, at *8 (E.D.N.Y. Mar. 18, 2015).

Employers are required to pay employees state minimum wage if it exceeds federal minimum

wage.  29 U.S.C. § 218(a).  Federal minimum wage in 2016, 2017, and 2018 was $7.25 per hour.[2]

---

[2] *Minimum Wage*, U.S. Department of Labor, https://www.dol.gov/general/topic/wages/minimumwage (last visited
March 12, 2020).

The minimum wage in New York City was $9.00 in 2016, $11.00 in 2017, and $13.00 in 2018. (Memo of Law at 14.)  Accordingly, any unpaid wages will be considered at the state minimum wage rate.

Villarrubia alleges that, when working as a waiter, he was paid a rate of $7.50 per hour in 2016 and $8.00 per hour from January 2017 until the end of his employment.  (Villarrubia Decl., Dkt. 19 at ¶ 12.)  He asserts that, when working as a grill man, he was paid at a rate of $9.00 per hour in 2016 and $10.50 per hour from January 2017 until the end of his employment.  (*Id.*)  In their Supplemental Filing, Plaintiffs average Villarrubia's hourly rates for his work in these two positions to arrive at a rate of $8.25 for 2016 and $9.25 for 2017 and 2018.[3]  (Damage Calculations Chart at 1.) Villarrubia asserts that, throughout his employment, he "worked five days per week on Wednesdays through Sundays" with a typical schedule of "6:00 a.m. to 3:00 pm. on Wednesday, Friday, Saturday and Sunday and 3:00 p.m. to 9:00 p.m. on Thursday."  (Villarrubia Decl. ¶ 10.)  He alleges that he was "frequently [ ] required to stay longer than [his] scheduled shifts to service remaining customers at the restaurant," resulting in Villarrubia working an average of 43.5 hours per week.  (*Id.* ¶¶ 10-11.)

Accordingly, for the 913.5 hours (21 weeks x 43.5 hours) Villarrubia alleges to have worked in 2016, he is entitled to the minimum wage amount of $9 per hour instead of the $8.25 average rate he was paid, and the undersigned recommends that he be awarded $685.13 in unpaid minimum wages.  For the 2,262 hours (52 weeks x 43.5 hours) he alleges to have worked in 2017, he is entitled to the minimum wage amount of $11 per hour instead of the $9.25 average rate he was paid, and the undersigned recommends that Villarrubia be awarded $3,958.50 in unpaid minimum wages.  For the 217.5 hours (5 weeks x 43.5 hours) he alleges to have worked in 2018, he is entitled to the minimum

---

[3] The undersigned notes that averaging Villarrubia's wages as a grill man and waiter is not a perfect measure of the rate he was paid because he estimates that he worked 40% as a waiter and 60% as a grill man; an average presumes that he worked 50% of the time at the lower waiter rate.  However, in the absence of employment records and given that the ratio and hours are approximate, the undersigned accepts Plaintiff's offered calculations.

wage amount of $13 per hour instead of the $9.25 average rate he was paid, and the undersigned recommends that Villarrubia be awarded $815.63 in unpaid minimum wages.  In total, the undersigned recommends that Villarrubia be awarded $5,459.25 in unpaid minimum wages.

Aparcedo alleges that, when working as a waiter, he was paid a rate of $7.50 per hour in 2016 and $8.00 per hour from January 2017 until the end of his employment.  (Aparcedo Decl., Dkt. 21 at ¶ 11.)  He asserts that, when working as a grill man, he was paid at a rate of $9.00 per hour in 2016 and $10.50 per hour from January 2017 until the end of his employment.  (*Id.*)  In their Supplemental Filing, Plaintiffs average Aparcedo's hourly rates, arriving at $8.25 for 2016 and $9.25 for 2017 and 2018.  (Damage Calculations Chart at 1.)  Aparcedo asserts that, throughout his employment, he "was assigned to work four dates per week on Mondays, Tuesdays, Wednesdays and Fridays," with a typical schedule of "6:00 a.m. to 10:00 p.m. on Monday, 3:00 p.m. to 10:00 p.m. on Tuesday, 4:00 p.m. to 11:00 p.m. on Wednesday, and 3:00 p.m. to 11:00 p.m. on Friday." (Aparcedo Decl. ¶ 8.)  He alleges that he was "frequently [ ] required to stay longer than [his] scheduled shifts to service remaining customers at the restaurant," resulting in Aparcedo working an average of 43 hours per week.  (*Id.* ¶¶ 9-10.)

Accordingly, for the 516 hours (12 weeks x 43 hours) Aparcedo alleges to have worked in 2016, he is entitled to the minimum wage amount of $9 per hour instead of the $8.25 average rate he was paid, and the undersigned recommends that he be awarded $387 in unpaid minimum wages. For the 2,236 hours (52 weeks x 43 hours) he alleges to have worked in 2017, he is entitled to the minimum wage amount of $11 per hour instead of the $9.25 average rate he was paid, and the undersigned recommends that Aparcedo be awarded $3,913.00 in unpaid minimum wages.  For the 215 hours (5 weeks x 43 hours) he alleges to have worked in 2018, he is entitled to the minimum wage amount of $13 per hour instead of the $9.25 average rate he was paid, and the undersigned

recommends that Aparcedo be awarded $806.25 in unpaid wages.  In total, the undersigned recommends that Aparcedo be awarded $5,106.25 in unpaid minimum wages.

Gomez alleges that he worked as a waiter and was paid at a rate of $8.00 per hour throughout his employment.  (Gomez Decl., Dkt. 20 at ¶¶ 5, 10.)  He asserts that, throughout his employment, he "worked five days per week on Mondays, Tuesdays, Wednesdays, Thursdays and Saturdays," with a typical schedule of "3:00 p.m. to 11:00 p.m. on Monday, 6:00 a.m. to 3:00 p.m. on Tuesday, 3:00 p.m. to 11:00 p.m. on Wednesday, 6:00 a.m. to 3:00 p.m. on Thursday, and 3:00 p.m. to 12:00 a.m. on Saturday."  (Gomez Decl. ¶ 8.)  He alleges that he was "frequently [ ] required to stay longer than [his] scheduled shifts to service remaining customers at the restaurant," resulting in Gomez working an average of 44.5 hours per week.  (*Id.* at ¶¶ 8-9.)

Accordingly, for the 1,913.5 hours (43 weeks x 44.5 hours) Gomez alleges to have worked in 2017, he is entitled to the minimum wage amount of $11 per hour instead of the $8.00 average rate he was paid, and the undersigned recommends that he be awarded $5,740.50 in unpaid minimum wages.  For the 222.5 hours (5 weeks x 44.5 hours) Gomez alleges to have worked in 2018, he is entitled to the minimum wage amount of $13 per hour instead of the $8.00 average rate he was paid, and the undersigned recommends that he be awarded $1,112.50 in unpaid minimum wages.  In total, the undersigned recommends that Gomez be awarded $6,853.00 in unpaid minimum wages.

Accordingly, the undersigned recommends that Plaintiffs be awarded a total of $17,418.50 for unpaid minimum wage compensation.

        ii.    Overtime Wages

Under both the FLSA and the NYLL, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week."  *Nakahata v. New York-Presbyterian Health Care Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (citing 29 U.S.C. § 207(a)); *see also* N.Y. Lab. Law §§ 650 *et seq.*; 12 N.Y.C.R.R. § 142-2.2).  To

support "a reasonable inference" that he or she worked more than forty hours in a given week, *Nakahata*, 723 F.3d at 201, a plaintiff must sufficiently allege some uncompensated time in excess of the 40 hours of work in a given workweek, *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013), and provide "sufficient detail about the length and frequency" of the unpaid work, *Nakahata*, 723 F.3d at 201.  *See also Fermin*, 93 F. Supp. 3d at 44-45 (finding allegations that plaintiff worked over forty hours a week established an overtime claim).

Plaintiffs allege that they were paid at a straight time rate for all hours worked.  (Damage Calculations Chart at 1.)  For the average 3.5 hours of overtime Villarrubia alleges he worked per week throughout his employment at La Hoguera Paisa, he is due an additional 50% of the minimum wage of $9.00 per hour in 2016, an additional 50% of the minimum wage of $11.00 per hour in 2017, and an additional 50% of the minimum wage of $13.00 per hour in 2018.  Therefore, the undersigned recommends that Villarrubia be awarded $1,445.50 in unpaid overtime wages.

Similarly, for the average 3.0 hours of overtime Aparedo alleges he worked per week throughout his employment at La Hoguera Paisa, he is due an additional 50% of the minimum wage of $9.00 per hour in 2016, an additional 50% of the minimum wage of $11.00 per hour in 2017, and an additional 50% of the minimum wage of $13.00 per hour in 2018.  Therefore, the undersigned recommends that Aparcedo be awarded $1,117.50 in unpaid overtime wages.

Finally, for the average 4.5 hours of overtime Gomez alleges he worked per week throughout his employment at La Hoguera Paisa, he is due an additional 50% of the minimum wage of $11.00 per hour in 2017 and an additional 50% of the minimum wage of $13.00 per hour in 2018. Therefore, the undersigned recommends that Gomez be awarded $1,210.50 in unpaid overtime wages.

Accordingly, the undersigned recommends that Plaintiffs be awarded a total of $3,773.50 for unpaid overtime wages.

iii.   Liquidated Damages

Under both the FLSA and the NYLL, an employee may be entitled to recover liquidated damages.  29 U.S.C. § 216(b); N.Y. Lab. Law § 663.  If the employer shows that "the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the FLSA or NYLL, the court may decide not to award liquidated damages.  29 U.S.C. § 260; N.Y. Lab. Law § 198(1-a).  Since Defendant failed to respond to the Motion, no good faith exists and liquidated damages are appropriate.  *See Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695 (ARR) (MDG), 2015 WL 1529653, at *12 (E.D.N.Y. Mar. 31, 2015) (defaulting defendants did not show good faith).

Plaintiffs can recover "one hundred percent of the total amount of wages found to be due." N.Y. Lab. Law § 198(1-a).  Since Plaintiffs may not recover liquidated damages under both the NYLL and FLSA, *see Chowdhury v. Hamza Express Food Corp.*, 666 Fed. Appx. 59, 61 (2d Cir. 2016) (summary disposition); *see also Leon v. Zita Chen*, No. 16-CV-480 (KAM) (PK), 2017 WL 1184149, at *9 (E.D.N.Y. Mar. 29, 2017), and the damages under FLSA and NYLL are the same, Plaintiffs are entitled to an award of $21,192 in liquidated damages, an amount equal to the sum of the minimum and overtime wages due.

iv.   Interest

Plaintiffs seek "pre-judgment interest at the rate of 9% per annum."  (Memo of Law at 20.) Since "liquidated damages and pre[-]judgment interest are not functional equivalents under the NYLL, prevailing plaintiffs may recover both for claims brought under the NYLL."  *Saucedo*, 2016 WL 8376837, at *16.  Courts have discretion in determining a reasonable date from which to award pre-judgment interest, such as the "earliest ascertainable date the cause of action existed" or a midway point between when the plaintiff began and ended work if damages were incurred at various times.  *See Santillan v. Henao*, 822 F. Supp. 2d 284, 298 (E.D.N.Y. 2011).

16

Because Plaintiffs were denied adequate wages throughout their employment, the Court will use an intermediate date:

| Plaintiff | Start Date | End Date | Midpoint | Midpoint to End Date |
|---|---|---|---|---|
| Villarrubia | 8/1/2016 | 2/20/2018 | 5/12/2017 | 284 Days |
| Aparcedo | 10/1/2016 | 2/20/2018 | 6/11/2017 | 254 Days |
| Gomez | 3/1/2017 | 2/22/2018 | 8/27/2017 | 179 Days |

The statutory rate for pre-judgment interest is nine percent per annum. N.Y. C.P.L.R. § 5004.

| Plaintiff | Total Wage Damages | 9% of Wage Damages | 9% of Wage Damages / 365 | Daily interest x (Midpoint to End Date) |
|---|---|---|---|---|
| Villarrubia | $6,904.75 | $621.43 | $1.70 (Daily interest) | $1.70 x 284 Days **$482.80** |
| Aparcedo | $6,233.75 | $561.04 | $1.54 (Daily interest) | $1.54 x 254 Days **$391.16** |
| Gomez | $8,063.50 | $725.72 | $1.99 (Daily interest) | $1.99 x 179 Days **$356.21** |

Therefore, the undersigned respectfully recommends that Villarrubia be awarded pre-judgment interest in the amount of $482.80, Aparcedo be awarded pre-judgment interest in the amount of $391.16, and Gomez be awarded pre-judgment interest in the amount of $356.21. Additionally, the undersigned respectfully recommends that Plaintiffs be awarded pre-judgment interest from their respective end dates to the filing of this Report and Recommendation:

| Plaintiff | Daily Interest | End Date | End Date to R&R (3/13/2020) | Pre-judgment interest to R&R |
|---|---|---|---|---|
| Villarrubia | $1.70 | 2/20/2018 | 752 Days | $1.70 x 752 Days **$1,278.40** |
| Aparcedo | $1.54 | 2/20/2018 | 752 Days | $1.54 x 752 Days **$1,158.08** |
| Gomez | $1.99 | 2/22/2018 | 750 Days | $1.99 x 750 Days **$1,492.50** |

Finally, the undersigned respectfully recommends that Plaintiffs be awarded pre-judgment interest from the filing of this Report and Recommendation through the date judgment is entered at the rates of $1.70 per day for Villarrubia, $1.54 per day for Aparcedo, and $1.99 per day for Gomez.

Both 28 U.S.C. § 1961 and N.Y. C.P.L.R. § 5003 allow for the award of post-judgment interest. Post-judgment interest is governed by the federal rate as set forth in 28 U.S.C. § 1961. *See Tacuri v. Nithun Constr. Co.,* No. 14-CV-2908 (CBA) (RER), 2015 WL 790060, at *12 (E.D.N.Y. Feb. 24, 2015). Accordingly, the undersigned respectfully recommends that Plaintiffs be awarded post-judgment interest, to be calculated from the date the Clerk of Court enters judgment in this action until the date of payment, at the rate set forth in 28 U.S.C. § 1961.

v.     Wage Notice and Statement Violations

Plaintiffs allege violations of Sections 195(1) and 195(3) of the NYLL, the statute's wage notice and statement provisions. (Compl. ¶¶ 120, 123.)

Section 195(1)(a) requires employers to provide employees at the time of hiring with a wage notice containing, *inter alia,* the rate of pay, the basis thereof, and pay schedule. After February 27, 2015, violations of Section 195(1) carry damages of $50 per workday, for a maximum of $5,000. N.Y. Lab. Law § 198(1-b).

Section 195(3) requires employers to provide employees with "a statement with every payment of wages," listing various information including the dates of work covered by the payment,

18

information identifying the employer and employee, details regarding the rate of pay and the overtime rate of pay, and the number of hours worked.  After February 27, 2015, violations of Section 195(3) carry damages of $250 per workday, for a maximum of $5,000.  N.Y. Lab. Law § 198 (1-d).

Here, Plaintiffs allege that they never received wage notices or statements from Defendants at any point throughout the course of their employment.  (Compl. ¶¶ 65, 123.)  Because Plaintiffs worked without a wage notice for more than 100 days and without a wage statement for more than 20 days, and these violations occurred after February 27, 2015, they are entitled to recover the maximum statutory damages of $5,000 under Section 195(1) and $5,000 under Section 195(3).  *See, e.g., Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633 (ARR) (JO)*, 2019 WL 3244187, at *5 (awarding $5,000 under Section 195(3) because the plaintiff worked without receiving paystubs for more than 20 days after February 27, 2015).

Accordingly, the undersigned recommends that each Plaintiff be awarded $10,000 in statutory damages for wage statement and notice violations**.**

## IV.    Gender Discrimination Claims

### a.    Liability

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's … sex." 42 U.S.C.A. § 2000e-2(a)(1).

To prevail on a Title VII claim, Plaintiffs must demonstrate that La Hoguera Paisa qualifies as an "employer" under the law.  Title VII defines "employer" as an entity "engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year."  42 U.S.C. § 2000e(b).  Plaintiffs

allege that La Hoguera Paisa engaged in "an industry affecting commerce" and "was open seven days per week, for approximately 18 hours per day and employed more than 15 employees during any given time period." (Compl. ¶¶ 14, 17.)  Plaintiffs worked at La Hoguera from August 2016 (Villarrubia), October 2016 (Aparcedo), and March 2017 (Gomez) through February 2018.  (*Id.* at ¶¶ 40, 46, 52.)  Therefore, the undersigned finds that Plaintiffs have sufficiently demonstrated that La Hoguera Paisa qualifies as an employer under Title VII.

To prevail on a NYCHRL or NYHRL claim, Plaintiffs must establish that La Hoguera Paisa employed at least four employees.  N.Y. Admin. Code §§ 8-102; N.Y. Exec. Law § 292(5).  Plaintiffs contend that La Hoguera Paisa employed more than 15 people at any given time.  (Compl. ¶ 14.)  Therefore, the undersigned finds that Plaintiffs have sufficiently demonstrated that La Hoguera Paisa qualifies as an employer under the NYCHRL and NYHRL.

Plaintiffs have the initial burden of proving a *prima facie* case. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).  To satisfy the burden of proving a *prima facie* case, Plaintiffs must show that (i) they are a member of a protected class; (ii) they were qualified to hold the position in question; (iii) they were subject to an adverse employment action; and (iv) the adverse action occurred under circumstances giving rise to an inference of gender discrimination.  *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003).

Plaintiffs are all male, and gender is a protected class.  (Compl. ¶¶ 7-9.)  *See* Civil Rights Act of 1964, Title VII, § 2000e-2(a).  Plaintiffs assert that they were qualified and received no complaints or discipline regarding their work performance.  (Compl. ¶ 38.)  All Plaintiffs were terminated from employment, which constitutes an adverse employment action.  Villarrubia alleges that he was discharged on February 20, 2018, via a phone call from a fellow co-worker, who "specifically mentioned that the new owner, Julio, did not want any male waiters working at the restaurant. (Villarrubia Decl. at ¶ 18.)  Villarrubia spoke directly to Julio on February 22, 2018, who confirmed

20

that he did not want male waiters.  (*Id.* at ¶ 19.)  Aparcedo alleges that he was discharged on February 20, 2018, in a text message from the same co-worker that informed Villarrubia, informing him that the new boss "only wants women." (Aparcedo Decl. at ¶ 15.)  Gomez alleges that he was approached by Julio on February 20, 2018 and told that he was discharged because Julio only wanted female waitresses.  (Gomez Decl. at ¶ 16.)  He was permitted to continue working until February 22, 2018.  (*Id.* at ¶ 17.)  These comments by Julio, the new owner of Defendant, that he only wanted female waitstaff, give rise to an inference of gender discrimination against the male Plaintiffs. Therefore, Plaintiffs have met their initial burden.

After this "minimal" burden is met, the burden shifts to the defendant to prove that their actions were taken "for a legitimate, nondiscriminatory reason."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993).  Since La Hoguera Paisa has failed to appear, the "[e]stablishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Id.* at 506.

The New York Human Rights Law ("NYHRL") prohibits an employer from discharging an employee "because of an individual's … sex."  N.Y. Exec. Law § 296(1)(a).  Because "claims brought under New York State's Human Rights Law are analytically identical to claims brought under Title VII," Plaintiffs have similarly met their burden for the discrimination claim under the NYHRL.  *See Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997).

The New York City Human Rights Law ("NYCHRL") prohibits an employer or agent thereof from discharging an employee on account of the their "actual or perceived … gender." N.Y.C. Admin. Code §§8-107(1)(a).  Although Plaintiffs' allegations under the NYCHRL must be analyzed separate and apart from state and federal law, because the undersigned finds that Plaintiffs have met their burden for the discrimination claim under Title VII and the NYHRL, Plaintiffs have also met their burden under the NYCHRL.

21

b.   Damages

Plaintiffs did not present support for damages related to their gender discrimination claims. (Memo of Law at 17.)  However, they request that the Court hold an inquest for this purpose.  The undersigned recommends that an inquest be held.

## V.   Attorneys' Fees and Costs

Plaintiffs seek reasonable attorneys' fees, which they are entitled to recover under both the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 198.  Title VII, the NYHRL, and the NYCHRL also allow Plaintiffs to recover attorneys' fees and costs at the court's discretion.  *See* 42 U.S.C. § 2000e-5(k); N.Y. Exec. Law § 297(10); N.Y.C. Admin. Code § 8-502(g).  District courts have broad discretion to determine the amount awarded, and the party requesting fees must submit documentation to support its claims.  *Mahoney*, 2016 WL 6585810, at *18.  Courts calculate appropriate attorneys' fees by multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate.  *Saucedo*, 2016 WL 8376837, at *17.  This "lodestar method" may be adjusted based on the circumstances of the case.  *Id.* (internal quotation marks omitted).

Plaintiffs reserved the right to apply to this Court for attorneys' fees and costs in their Memorandum of Law.  In their Supplemental Filing, Plaintiffs include attorney time records (Ex. 1 to Supplemental Filing, Dkt. 26-1), but failed to provide a description of the qualifications of the attorneys.  This failure "could provide a basis to deny [P]laintiffs' application for an award of attorneys' fees, without prejudice to renewal upon a proper showing."  *Disney Enters., Inc. v. Merch.*, No. 05–CV–1489 (NAM), 2007 WL 1101110, at *8 (N.D.N.Y. Apr. 10, 2007) (collecting cases).

Therefore, the undersigned recommends that Plaintiffs' request for attorneys' fees be denied, with leave to renew when supplemented with attorney qualifications supporting the requested hourly rate.

Plaintiffs are also entitled to recover reasonable costs under the FLSA and NYLL.  *See* 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1); *Perez v. Queens Boro Yang Cleaner, Inc.*, No. 14-CV-7310 (SJ) (JO), 2016 WL 1359218, at *8 (E.D.N.Y. Mar. 17, 2016), *R&R adopted*, 2016 WL 1337310 (E.D.N.Y. Apr. 5, 2016).  Plaintiffs include the request for costs in their Memorandum of Law (Memo of Law at 21) and in Exhibit 1 of the Supplemental Filing includes calculations for $605.00 in costs, comprised of the court filing fee and service fees.  The undersigned therefore recommends that Plaintiffs be awarded $605.00 in costs.

## CONCLUSION

Based on the foregoing, the undersigned recommends that a default judgment be entered against Defendant, and that Plaintiffs be awarded the following damages:

**Plaintiff Villarrubia**:

(i)      **$5,459.25** in unpaid minimum wage;

(ii)      **$1,445.50** in unpaid overtime wages**;**

(iii)      **$6,904.75** in liquidated damages;

(iv)      **$482.80** in pre-judgment interest until the end of his employment;

(v)      **$1,278.40** in pre-judgment interest from the end of this employment until March 13, 2020;

(vi)      Daily interest calculated from the March 13, 2020 through the date judgment is entered;

(vii)      Post-judgment interest at the rate set forth in 28 U.S.C. § 1961;

(viii)      **$5,000** in statutory damages for the NYLL wage notice claim;

(ix)      **$5,000** in statutory damages for the NYLL wage statement claim;

**Plaintiff Aparcedo**:

(i)      **$5,106.25** in unpaid minimum wage;

(ii)     **$1,117.50** in unpaid overtime wages**;**

(iii)    **$6,223.75** in liquidated damages;

(iv)    **$391.16** in pre-judgment interest until the end of his employment'

(v)     **$1,158.08** in pre-judgment interest from the end of this employment until March 13, 2020;

(vi)    Daily interest calculated from March 13, 2020 through the date judgment is entered;

(vii)   Post-judgment interest at the rate set forth in 28 U.S.C. § 1961;

(viii)  **$5,000** in statutory damages for the NYLL wage notice claim;

(ix)    **$5,000** in statutory damages for the NYLL wage statement claim;

**Plaintiff Gomez**:

(i)     **$6,853.00** in unpaid minimum wage;

(ii)    **$1,210.50** in unpaid overtime wages**;**

(iii)   **$8,063.50** in liquidated damages;

(iv)   **$356.21** in pre-judgment interest until the end of his employment;

(v)    **$1,492.50** in pre-judgment interest from the end of this employment until March 13, 2020;

(vi)   Daily interest calculated from March 13, 2020 through the date judgment is entered;

(vii)  Post-judgment interest at the rate set forth in 28 U.S.C. § 1961;

(viii) **$5,000** in statutory damages for the NYLL wage notice claim;

(ix)   **$5,000** in statutory damages for the NYLL wage statement claim;

Additionally, the undersigned recommends that Plaintiffs be awarded costs in the amount of $605.

The undersigned recommends that Plaintiffs be granted leave to request an inquest to determine damages related to their discrimination claims.

The undersigned recommends that Plaintiffs' request for attorneys' fees be denied, with leave to renew when supplemented with attorney qualifications supporting the requested hourly rate.

Plaintiff is directed to serve this Report and Recommendation on Defendant forthwith and file proof of service on the docket by March 20, 2020.  Any objection to this Report must be filed in writing with the Clerk of Court within fourteen (14) days of service.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Failure to timely file any such objection waives the right to appeal the District Court's Order.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

**SO ORDERED:**

*Peggy Kuo*

PEGGY KUO
United States Magistrate Judge

Dated:   Brooklyn, New York
           March 13, 2020

25